Alexandria
# CLYDE JOHNSON, SR.
v.
# COMMONWEALTH OF VIRGINIA
No. 1190-87-4
Decided October 17, 1989

COUNSEL

Sa'ad El-Amin, (El-Amin & Carr, on brief), for appellant.

Birdie H. Jamison, Assistant Attorney General (Richard A. Conway, Assistant Attorney General; Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

DUFF, J.—Clyde Johnson, Sr. appeals his convictions of two counts of rape,[1] four counts of carnal knowledge of a child between thirteen and fifteen years of age,[2] and three counts of aggravated sexual battery[3] involving "T" and "W".[4] He also appeals his convictions of rape and attempted rape and two counts of aggravated sexual battery involving "H." The issues on appeal are (1) whether the trial court erred in refusing to dismiss the indictments involving T and H because of pre-indictment delay, and (2) whether the court erred in denying Johnson an evidentiary hearing under Code § 18.2-67.7(C) (the Rape-Shield statute) on his allegations of prior sexual misconduct by the three victims. Because we find that the court erred in denying an evidentiary hearing with respect to the allegations concerning T and W, we reverse the various convictions involving those two victims. We affirm the convictions involving H.

I.

FACTS

On appeal we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988); *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). When so viewed the record reveals the following:

In 1974, T, then 13 years old, moved to Petersburg where she lived with her grandmother and other family members. She attended the First Baptist Church, where Johnson was pastor. He

---

[1] Code § 18.2-61.
[2] Code § 18.2-63.
[3] Code § 18.2-67.3.
[4] Because each of the complaining witnesses was a juvenile at the time of the alleged occurrences, they will not be identified further.

provided assistance to T's family in various forms, but he displayed a special interest in T by giving her gifts of money and taking her shopping. She testified that at one point in 1974, after a shopping trip, Johnson drove his car onto a side road in Petersburg, stopped and began touching her on her breasts and vagina. He then unzipped his pants and began having sexual intercourse with her. When she complained that it hurt, he replied that it would not hurt for long. She testified about a month later that Johnson again had intercourse with her in his office. Thereafter, they frequently would have intercourse at her home, which continued until 1977.

T did not tell anyone about her relationship with Johnson because she "fell in love with him." She also stated that she trusted him and wanted to be with him because he would give her things that her family could not afford to give her. The sexual activity between T and Johnson ceased when she met a high school boy whom she liked. She then told Johnson that she did not want to see him anymore. T married in 1981, and her husband was the first person to whom she revealed her relationship with Johnson.

W was born in 1973, and attended Johnson's church in 1985 when she was twelve years old. She testified that she was with Johnson about twice a week, at which times he would take her and her younger sister to the store or to various fast-food restaurants. She stated that during this time, on four separate occasions, while traveling to or from their destination, Johnson touched her on her breasts and her vagina. These incidents occurred after dark while W was seated in the front seat of Johnson's vehicle between Johnson and her sister. Whenever Johnson touched her, W would turn to face her sister, who was always "looking someplace else" at that time. At first she did not tell anyone because she was afraid of Johnson and thought he was "crazy."

W stated further that in 1985, T, who was a friend, asked her why she did not like to be with Johnson. W then told T what had happened and as a result they became closer friends. About this time W began visiting T at her house, which was within walking distance. In fact, W began going to T's house instead of going to school, which concerned W's mother and grandmother. As this practice continued, W's mother sought Johnson's aid in trying to terminate the relationship.

H testified that on one occasion in 1982, when she was twelve years old, Johnson approached her while she was attending a tutoring program and placed his hands on her breasts and vagina. On another occasion that year he took her into his office, started "feeling" her, then had sexual intercourse with her. She likewise testified to incidents in 1984 and 1985 when Johnson took her into his office and had intercourse with her. She did not tell anyone about these incidents because Johnson had told her that no one would believe her.

## II.

### PRE-INDICTMENT DELAY

Johnson contends that the court erred in refusing to dismiss the indictments involving T and H because of pre-indictment delay. The indictments charged criminal conduct beginning in 1974 and extending through May 1982. A pretrial evidentiary hearing on a motion to dismiss was held. Johnson testified that he had been unable to reconstruct his activities during the time span covered by the indictments and that he had kept no diary of his daily activities.

Lt. William C. Rhode of the Petersburg Bureau of Police testified that his department had received the information in April 1986 which led to the indictments. Johnson was indicted on October 16, 1986. Lt. Rhode also testified that he did not know how long the Commonwealth's attorney had the information in his office before turning it over to the police. Detective Patrick Kelleher was the first investigator assigned from the police department to investigate the case. He testified that "once we felt our investigation was final to that point, the very next term of court the indictments were brought to the grand jury." He denied any prior knowledge of the crimes before Lt. Rhode initiated the investigations which he described as "about six months ago." He stated that he believed that the Virginia State Police at one point were also involved in this case, as well as Child Protective Services. This he described as being "approximately the same time, six months ago."

On these facts Johnson contends that he has shown that the delay caused substantial prejudice by his inability to reconstruct adequately or accurately his activities during the time span of the

indictments. He cites *United States v. Marion*, 404 U.S. 307 (1971), and *United States v. Lovasco*, 431 U.S. 783 (1977), in support of his argument that once he has shown prejudice the burden shifts to the Commonwealth to show that the delay was not an intentional device to gain a tactical advantage over him. He asserts that since the Commonwealth made no such showing, his motion to dismiss the indictments should have been granted.

The Commonwealth also relies on *Marion* and *Lovasco*. They argue that neither case shifts the burden of proof, or of going forward with the evidence, and contend that Johnson had to show both actual prejudice and that the pre-indictment delay was purposeful in order to gain a tactical advantage.

Neither *Marion* nor *Lovasco* deals directly with the issue raised by Johnson. There is, however, authority which suggests that the government is under the burden to explain a prejudice-causing delay. *See United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399 (4th Cir. 1985). However, for two reasons, we find it unnecessary to decide whether the burden shifts once a showing of actual prejudiceis made.

First, as *Lovasco* teaches, rather than deviating from elementary standards of fair play and decency, a prosecutor abides by them if he refuses to seek indictments until he is satisfied that he should prosecute and will be able to establish guilt beyond a reasonable doubt. This prosecution dealt with numerous charges involving young and inexperienced victims. Six months elapsed from the time the information arrived at the Police Bureau until the grand jury returned the indictments. This delay was not inordinate or oppressive considering the nature of the case. Likewise, the record does not support a finding of a lengthy delay or investigative period by the State Police or Child Protective Services prior to the Petersburg Police receipt of the information. A fair inference from Detective Kelleher's testimony was that their involvement occurred around the same time as when he first received the case from the Commonwealth's attorney.

Second, Johnson's allegations of prejudice involve claims of faded memory and evidentiary difficulties inherent in any delay. However, faded memories occasioned by pre-indictment delay do not alone satisfy the actual prejudice requirement. *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984); *Cooper v. Mitch-*

*ell*, 647 F.2d 437, 441, (4th Cir. 1981); *United States v. Ramos*, 586 F.2d 1078 (5th Cir. 1978). We find no error in the Court's denial of the motion to dismiss the indictments involving T and H on the basis of pre-indictment delay.

## III.

### *RAPE-SHIELD LAW*

Prior to the trial, Johnson gave written notice, pursuant to Code § 18.2-67.7, that he intended to introduce evidence of previous sexual misconduct on the part of T, W and H. He alleged that T and W were engaged in a lesbian relationship and that this relationship provided a motive for T and W to fabricate the charges against him.

The alleged evidence regarding H was that she told Johnson that her stepfather had appeared nude in front of her and had told her on several occasions that he was going to have sex with her. The notice also alleged that Johnson had been advised that H and other youngsters were using the church bus on Sundays to hide out and engage in oral sex. Johnson confronted H about these allegations, to which she did not respond. Thereafter, Johnson ordered locks installed on the bus to prevent anyone from gaining access.

The record reflects that W's mother had become increasingly concerned about the amount of time her daughter was spending with T. In April 1986 she sought Johnson's aid in removing her daughter from T's influence. At the mother's request Johnson, accompanied by W's younger sister, went to T's house in an effort to persuade W to return home. She refused to do so. This incident occurred around the time the police investigation, which led to the indictments, commenced.

In his argument in support of his motion for an evidentiary hearing pursuant to the statute, defense counsel made various representations to the court, including an allegation that when T saw Johnson attempting to intervene and terminate their relationship, she told W that she knew " how we can fix Reverend Johnson; we will make these false accusations of sexual misconduct by him against us and that will prevent him from doing so." Johnson argues that the evidence provides support for his allegation of a mo-

tive to fabricate the charges.

The court denied the motion for an evidentiary hearing but promised to "look at it again at the appropriate time before the evidence is offered." The court also prohibited counsel from mentioning this aspect of the evidence in the opening statement to the jury. At trial, during the testimony of W's mother, the court excused the jury and cleared the courtroom, advising that a matter had to be heard under the rape shield statute. Thereafter, the court ruled that any evidence of sexual misconduct prior to or subsequent to the charge involving W would not be admissible. The defense was permitted to show only that W's mother was concerned about a relationship between her daughter and T but not allowed to demonstrate its nature, i.e., that it was a lesbian relationship. Further, the court held that counsel would not be permitted to refer to the relationship as "unwholesome" or that T exercised an "unwholesome influence" over W.

Johnson contends that under the statute the court was required to hold an evidentiary hearing. There was no stipulation between the parties that the witnesses would support the allegations contained in the Notice filed by Johnson. We hold that under these circumstances the court erred in denying an evidentiary hearing on the matter.

 In 1981, the Virginia General Assembly enacted Code § 18.2-67.7 as part of a sweeping revision of the general laws pertaining to sexual assault. The statute prohibits the admission of general reputation evidence as to the prior unchastity of the complaining witness, but permits the introduction of evidence of specific acts of sexual conduct between the complaining witness and third persons in limited circumstances. *Winfield v. Commonwealth*, 225 Va. 211, 218-19, 301 S.E.2d 15, 19 (1983). The General Assembly clearly provided that evidence which was relevant to show that the complaining witness had a motive to fabricate the charge would be admissible. However, the Code prohibits the admission of such evidence until the court first determines its admissibility at an evidentiary hearing. Only by hearing the witnesses, or by stipulation of the Commonwealth that witnesses would testify as indicated in the Notice required by Code § 18.2-67.7(B), could the court determine whether the proferred evidence came within the statute.

Our review of the record indicates that the court believed there was no logical relationship, or relevance, between the fact that T and W might have been involved in a lesbian relationship and whether the acts charged against Johnson had actually occurred. However, the relationship between the prior acts of sexual misconduct and the motive to fabricate was more than simply speculative. Defense counsel represented that he had evidence that T had suggested to W that fabricating charges might frustrate Johnson's efforts to terminate their relationship. If the testimony at the evidentiary hearing supported these allegations, both a motive and an intent to fabricate the charges would have been shown. By denying the hearing under these circumstances, the trial court erred; for this reason the convictions for the offenses involving T and W are reversed.

■ As to the allegations concerning H, the record contains no similar representation that she threatened to fabricate the charges in retaliation for Johnson's denying access to the school bus on Sunday mornings. While the application of Code § 18.2-67.7(B) is not dependent upon an allegation of actual intent to fabricate, we hold that the defendant must do more than simply allege actual knowledge of prior sexual misconduct. Johnson's notice of intent to introduce evidence of prior sexual misconduct simply asserted that he was aware of such conduct and, with respect to one allegation, that he had confronted H with this information. We fail to see how these allegations, if believed, provide a motive to fabricate unless we are prepared to hold that in every case, a defendant's knowledge of prior sexual misconduct by the victim provides a motive to fabricate. To so hold would render Code § 18.2-67.7 meaningless. In short, the notice provided no logical nexus between the alleged sexual misconduct and motivation for fabricating the charges against Johnson. For this reason we find no abuse of discretion in the trial court's decision to deny an evidentiary hearing involving H. In summary, we reverse and remand the various convictions involving T and W, and we affirm the convictions involving H.

*Reversed and remanded in part;*
*affirmed in part.*

Koontz, C.J., concurred.

Benton, J., concurring and dissenting.

I join in Parts I and II of the opinion. I also join in those portions of Part III holding that the trial judge erred in refusing to hold an evidentiary hearing pursuant to Code § 18.2-67.7(C). I dissent from the remainder of Part III because I believe that the trial judge erred in refusing to hold an evidentiary hearing regarding the allegations against the complaining witness H.

The notice that Johnson filed pursuant to Code § 18.2-67.7(C) contains allegations of facts relating to H's conduct and asserts that those facts are "relevant to show that the complaining witnesses . . . had a motive to fabricate the charges." The majority apparently believes that because the record contains no representation that H threatened to fabricate the charges the trial judge did not err in refusing a hearing. A defendant is entitled to an evidentiary hearing to present "evidence relevant to show that the complaining witness *had a motive to fabricate* the charge." Code § 18.2-67.7(B) (emphasis added). Code § 18.2-67.7 does not require proof of an actual threat to fabricate.

Johnson's notice alleges that, during a conversation with Johnson, H accused another adult male of making sexual advances to her. In addition, it alleges that Johnson learned that H was engaging in oral sex and confronted her. The allegations provide the foundation for a claim that H had a motive to fabricate charges against Johnson. The allegations might support an inference that H harbored animosity toward Johnson arising from his confrontation with her concerning her sexual conduct. Contrary to the assertions in the majority opinion, the allegations on their face establish a nexus between those acts and a motive for falsifying charges against Johnson. This is not simply a case where the defendant alleges he was aware of prior sexual misconduct, and that this knowledge, standing alone, provided a motive to fabricate. Here, Johnson was the family's minister and had confronted H with her misconduct. It is reasonable to infer that H might fear that Johnson would inform her family, thus providing an incentive for H to make a pre-emptive strike by claiming that Johnson himself had engaged in sexual misconduct. The issue, however, is not which party is telling the truth; the issue is, instead, whether, based on the assertions contained in the notice, there was a need for an evidentiary hearing. In my opinion, Johnson was entitled to an opportunity to present evidence to a judge concerning the alle-

gations and to have that judge make a decision concerning the admissibility of that evidence based on the testimony presented. For these reasons, I would reverse all three cases and remand them to the circuit court for evidentiary hearings and for new trials.