**Salem**

ALBERT JAKE NEELEY, JR.

V.

COMMONWEALTH OF VIGINIA

No. 0418-92-3

Decided November 23, 1993

COUNSEL

Lonnie L. Kern, for appellant.

Virginia B. Theisen, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Albert Jake Neeley, Jr. (Neeley) appeals his conviction by jury of burglary in the nighttime with the intent to commit rape or sodomy, rape, and forcible sodomy. On appeal, Neeley contends that the trial court erred in denying his motion to introduce evidence of the complaining witness's prior sexual conduct.[1] In a pre-trial evidentiary hearing and at trial, the trial judge, citing Code § 18.2-67.7, refused to admit proffered evidence of the complaining witness's prior sexual conduct. Neeley alleges that barring the admission of this evidence prejudiced his constitutional right to a fair and impartial trial. For the following reasons, we reverse Neeley's conviction and remand the case for a new trial.

## I. Factual Background

On the evening of May 30, 1991, Carrie, a fourteen year old white female, stayed at home with her younger brother, while the children's mother worked the night shift at Holston Valley Hospital. Carrie went to sleep sometime after midnight.

Neeley was at Mary Adams's house that evening. He wore a jacket that had an emblem hanging from it that made "a lot of noise." He left Adams's house between 3:00 and 3:45 a.m. Adams lives approximately three-tenths of a mile from Carrie's home.

---

[1] Neeley also challenges the sufficiency of the evidence to sustain his conviction as to each count; however, as our resolution of his first assignment of error mandates that we reverse the conviction, we do not address the sufficiency issue.

At trial, Carrie testified that she awoke when a black man grabbed her throat. She heard a "jingling" noise, leading her to believe that the assailant wore some sort of necklace. The assailant told her not to scream. He told her to take off her clothes. When she did not comply, the assailant ripped off her panties, raped her and forcibly sodomized her anally.

Carrie further testified that the assailant sounded like Neeley. She knew Neeley's voice because he had previously visited Carrie's mother, went camping with the family once, and officiated in the baseball program in which Carrie's brother participated.

Following the attack, Carrie called her two aunts and told them about the assault. When Dennis Brummitt of the Norton Police Department arrived at Carrie's home, he saw the torn panties in Carrie's bedroom. Carrie told the police that the assailant wore a necklace or something that jingled.

Brummitt testified that when he first interviewed Neeley on June 3, Neeley denied having sexual intercourse with Carrie on May 31; however, when Brummitt interviewed Neeley on June 19, Neeley admitted being at Carrie's house around 3:45 a.m. on May 31. According to Brummitt, Neeley gave him the following account of the events of that evening: as Neeley walked past Carrie's home, he saw a light in her bedroom window. He called Carrie's name and she answered the door. After they discussed Carrie's personal problems, Neeley laid down on her bed and went to sleep. Neeley awoke to find Carrie having sexual intercourse with him. At trial, Neeley denied having made this statement, and Brummitt admitted that he had no record of the conversation and never presented a statement to Neeley for his signature.

Elmer Gist, a technician with the forensic laboratory in Roanoke, examined hair samples obtained during the investigation of the case. Gist could not positively identify Neeley as the source of a hair fragment characteristic of hair from a person of African-American descent obtained through a cervical swab taken from Carrie. Another hair fragment, found in her clothing, had "no value for meaningful comparison." Two hairs, also characteristic of hair from a person of African-American descent, found in Carrie's bedclothes closely matched head hairs of Chastity Lewis, Carrie's girlfriend, who occasionally spent the night at Carrie's home.

Neeley filed a motion seeking an order to use evidence at trial of the complaining witness's prior sexual conduct. The motion recited that such evidence would "provide an alternative explanation for physical evidence of the offense charged which is introduced by the prosecution to explain the physical injury to the complaining witness's intimate parts." In support of his motion, Neeley argued that the indictment alleged the presence of abrasions in Carrie's vaginal area and, according to a medical report, Carrie admitted having sexual intercourse with her boyfriend on May 13, 1991. The trial court denied Neeley's motion, but noted that pursuant to Code § 18.2-67.7(C), if new information surfaced in the course of the preliminary hearing or trial, the court could reconsider the issue.

At trial, Neeley renewed the motion to introduce evidence of Carrie's sexual intercourse with her boyfriend on May 13. Although the Commonwealth had not introduced evidence of injury to Carrie's vaginal area, Neeley argued that the evidence would serve to explain the origin of the hair fragment found in her cervix. Both Neeley and the boyfriend are African-Americans.

Neeley asserted that Dr. Nasire Hesen, who examined Carrie on June 4, would testify that the hair fragment could have come from the intercourse with the boyfriend. The trial judge, after considering Code §§ 18.2-67.7(A)(1) and 18.2-67.7(B), found the purpose of the evidence impermissible under the statute.[2]

Neeley proffered Dr. Hesen's testimony for the record. Dr. Hesen stated that when she examined Carrie on June 4, Carrie recounted having engaged in intercourse with her boyfriend on May 13. Dr. Hesen stated that a hair deposited in the cervix on May 13 could "possibly" remain there until May 31. On cross-examination, Dr. Hesen stated that because Carrie's menstrual period occurred between May 13 and May 31, hair fragments from the intercourse on May 13 probably would not remain on May 31.

## II. Origin and Purpose of the Rape Shield Law

In 1974, Iowa, Florida, Michigan and California amended their rules of evidence by enacting "rape shield" statutes. Within ten years, virtually every state adopted some form of protection for complaining

---

[2] Code § 18.2-67.7 falls within Article 7, which addresses sexual assault crimes, of the criminal code. Entitled "Admission of evidence," this section is commonly known as the "rape shield" law.

witnesses in sexual assault cases. At the federal level, Fed. R. Evid. 412 achieved the same purpose. Virginia adopted its rape shield statute, Code § 18.2-67.7, in 1981.

These statutes limit harassing and embarrassing defense queries into the prior sexual conduct of the complainants, thereby encouraging victims to report sexual assaults and to testify at trial. The typical rape shield statute makes all evidence concerning a complainant's prior sexual conduct inadmissible, subject to specific exceptions to that rule of inadmissibility. *Winfield v. Commonwealth,* 225 Va. 211, 217-18, 301 S.E.2d 15, 19 (1983); *Johnson v. Commonwealth,* 9 Va. App. 176, 183, 385 S.E.2d 223, 227 (1989). In pertinent part, our statute provides:

Admission of evidence.

A. [G]eneral reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted. Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is:

1. Evidence offered to provide an alternative explanation for physical evidence of the offense charged which is introduced by the prosecution, limited to evidence designed to explain the presence of semen, pregnancy, disease, or physical injury to the complaining witness's intimate parts; or

2. Evidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force . . . provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case; or

3. Evidence offered to rebut evidence of the complaining witness's prior sexual conduct introduced by the prosecution.

. . . .

C. Evidence described in subsections A and B of this section shall not be admitted and may not be referred to at any preliminary hearing or trial until the court first determines the admissibility of that evidence at an evidentiary hearing. . . . If the court initially determines that the evidence is inadmissible, but new in-

formation is discovered during the course of the preliminary hearing or trial which may make such evidence admissible, the court shall determine in an evidentiary hearing whether such evidence is admissible.

Code § 18.2-67.7.

(1) Unlike Federal Rule 412, this statute has no separate provision for conducting a constitutional analysis of evidence not specifically allowed under one of the enumerated exceptions. *See* Fed. R. Evid. 412(b)(1). "In construing a statute, we first look to its plain language." *Jennings v. Division of Crime Victim's Compensation,* 5 Va. App. 536, 538, 365 S.E.2d 241, 243 (1988). The plain language of the rape shield law permits introduction of prior sexual conduct evidence only for specific purposes adddressed by those exceptions found therein. Accordingly, the plain language of the statute does not resolve the issue presented by this appeal.

### III. Conflict of Rape Shield Laws and The Rights of the Criminal Defendant

The appellate courts of this Commonwealth have not previously addressed the constitutional challenge presented by this appeal. The sensitive nature of the subject matter requires a precise review of the issues.

Application of the rape shield law "has presented the courts with the concomitant problem that no legislation, however salutary its purpose, can be so construed as to deprive a criminal defendant of his Sixth Amendment right to confront and cross-examine his accuser and to call witnesses in his defense." *Winfield,* 225 Va. at 218, 301 S.E.2d at 19. In *Winfield,* the Supreme Court did not have occasion to address the constitutional aspects of Code § 18.2-67.7, but noted: "Some jurisdictions have held such laws unconstitutional. . . . Others have, in order to give the statute a constitutional interpretation, implied an exception where the trial court, in an in camera hearing, makes a preliminary determination that the proffered evidence would be relevant and probative. . . . " *Id.* at 219, 301 S.E.2d at 20 (citing *State v. Jalo,* 27 Or. App. 845, 557 P.2d 1359 (Ct. App. 1976), and *State v. Howard,* 121 N.H. 53, 426 A.2d 457 (N.H. 1981)).

One of the fundamental constitutional rights of a criminal defendant is the right to due process of law, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Due

process requires that defendants have a fair opportunity to defend against the government's charges. *Stubblefield v. Commonwealth,* 10 Va. App. 343, 351, 392 S.E.2d 197, 200 (1990) (citing *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973)). Integral to a fair opportunity to defend against the government's charges is the Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor." *Chambers,* 410 U.S. at 294. Compulsory process allows a defendant to call witnesses to testify at trial, and, if necessary, to use the subpoena power to compel testimony.

The Sixth Amendment further guarantees a defendant the fundamental right to confront the witnesses against him. *Head v. Commonwealth,* 3 Va. App. 163, 168, 348 S.E.2d 423, 426 (1986) (citing *Pointer v. Texas,* 380 U.S. 400, 403 (1965)). When the testimony of a witness is adverse to the defendant, the defendant has the right to cross-examine the witness. When the testimony is favorable, the defendant has the right to have the jury hear the testimony.

Combined, the rights to compulsory process, confrontation and due process give the defendant a constitutional right to present relevant evidence. *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982) (an accused has the right to present evidence that is relevant, material, and favorable to his defense); *see also Jenkins v. McKeithen,* 395 U.S. 411, 429 (1969) (opinion of Marshall, J.) ("The right to present evidence is, of course, essential to the fair hearing required by the Due Process Clause").

This right must on occasion give way to the broader interest of the government in fairly administering justice. In *Chambers,* the Court stated that both prosecutors and defendants "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. at 302. Rules of procedure and evidence may, therefore, limit the right of a defendant to present relevant evidence. After showing the relevance of proffered evidence, the defendant must also comply with the rules requiring both material and probative value for the proffered evidence.

In *Evans-Smith v. Commonwealth,* 5 Va. App. 188, 361 S.E.2d 436 (1987), we described this three-part process:

Evidence is admissible if it is both relevant and material. "[E]vidence is relevant if it tends to establish the proposition for which it is offered." Evidence is material if it relates to a matter proper-

ly at issue. However, relevant evidence should be excluded if the prejudicial effect of the evidence outweighs its probative value. The fact that some prejudice may result does not justify automatic exclusion, however.

*Id.* at 196, 361 S.E.2d at 441 (citations omitted).

■ When a statute mandates exclusion of relevant, material evidence, due process will be satisfied only if the evidence excluded has low probative value and high prejudicial effect. With respect to the rape shield statute's exclusion of evidence, the Supreme Court has stated that "the specific sanction given by Code § 18.2-67.7 to evidence of the victim's prior sexual conduct, for strictly limited purposes, will accommodate *most of the foreseeable constitutional claims* which a defendant might legitimately raise." *Winfield,* 225 Va. at 219, 301 S.E.2d at 20 (emphasis added). Moreover, as the statute serves to instruct trial courts on a difficult point of evidentiary law, we should attempt by reasonable construction to make the statute constitutionally definite, rather than discard it as potentially flawed. *See Perkins v. Commonwealth,* 12 Va. App. 7, 14, 402 S.E.2d 229, 233 (1991).

### IV. Proper Application of the Rape Shield Law

■ Acknowledging that the rape shield law may exclude evidence that would otherwise be admitted under the Constitution, we face the dilemma here, alluded to in *Winfield,* 225 Va. at 217-18, 301 S.E.2d at 19, of either finding Code § 18.2-67.7 unconstitutional or implying in the Code an additional duty for the trial court to conduct a constitutional analysis of relevant evidence not admissible under the statute. "Legislative enactments come before courts with a strong presumption of constitutionality." *Willis v. Commonwealth,* 10 Va. App. 430, 441, 393 S.E.2d 405, 410 (1990). We will construe a statute to have a limited application if such a construction will avoid a conflict with the requirements of the Constitution. *Coleman v. City of Richmond,* 5 Va. App. 459, 462, 364 S.E.2d 239, 241, *reh'g denied,* 6 Va. App. 296, 368 S.E.2d 298 (1988); *see also Perkins,* 12 Va. App. at 14, 402 S.E.2d at 233.

■ Properly understood, the rape shield law serves as a predicate to the constitutional analysis for the admission of evidence of a victim's prior sexual conduct in a sexual assault case. Code § 18.2-67.7 first directs a trial judge to make a determination of relevance. After discarding evidence of prior sexual conduct proffered by the defendant to impugn the character of the victim or for some similarly impermissible purpose, the trial judge must then determine whether the evidence

falls within one of the enumerated exceptions in the statute, which by implication is a test of materiality, or is otherwise material to an issue of the case.

 Finally, the trial judge must admit other relevant, material evidence, not within the enumerated exceptions, when the exclusion of such evidence would deny the defendant the constitutional right to a fair opportunity to present evidence probative of his defense of the charges against him.

## V. Neeley's Case

At trial, Neeley sought to introduce evidence of Carrie's prior sexual behavior to explain the presence of a hair fragment in her cervix. Although the trial judge made no specific rulings on its relevance and materiality, the record clearly shows that in each instance this evidence would "tend to establish the proposition for which it [was] offered" (relevance), and would relate "to a matter properly at issue" (materiality). *Evans-Smith,* 5 Va. App. at 196, 361 S.E.2d at 441. This evidence explained the presence of the hair fragment and tended to rebut the Commonwealth's assertion that Neeley was the source of it. This evidence related to the issue of whether Neeley and Carrie had engaged in sexual intercourse.

The Commonwealth's evidence fell outside the enumerated exceptions to the rape shield statute involving the presence of semen, pregnancy, disease or physical injury to the complaining witness's intimate parts, and on this basis, the trial judge excluded Neeley's evidence. Neeley proffered testimony that could have explained the Commonwealth's evidence.[3] The probative value of this evidence, especially because it tended to rebut the only significant physical evidence of Neely's guilt presented by the Commonwealth, outweighs any embarrassment to Carrie or prejudice it might cause in the minds of the jury due to their awareness of her prior sexual activity. Accordingly, Neeley should have had the opportunity to present this

---

[3] The Commonwealth, relying on *Spruill v. Commonwealth,* 221 Va. 475, 271 S.E.2d 419 (1980), argues that Dr. Hesen's testimony lacked relevance because she expressed nothing more than a medical opinion based on a possibility. The testimony of the medical expert in *Spruill* lacked relevance because, in the words of the trial court, "He said it was a possibility [that the defendant was insane], but that he couldn't say [that the victim was insane]." 221 Va. at 479, 271 S.E.2d at 421. In the present case, Dr. Hesen stated that a hair fragment could remain in the cervix, and that it could remain there for 17 days during which a menstrual cycle occurred. Dr. Hesen's use of the word "possibility" is not dispositive to a determination of relevance. Her testimony as to the likelihood that a hair would remain in the cervix under those conditions goes to the weight the jury might attach to her testimony concerning the prior sexual contact, not its relevance.

evidence to the jury, and only the operation of the rape shield statute prohibited him from doing so. Under such circumstances, the constitutional rights of compulsory process, confrontation and due process give Neeley the right to present evidence favorable to his defense even though that evidence does not fall within the specific enumerated exceptions of the rape shield statute.

## VI. Harmless Error

Having determined that trial court excluded Neeley's proffered evidence in derogation of his constitutional right to present relevant evidence, we must determine whether that error prejudiced the result of his trial. *See Ferguson v. Commonwealth,* 240 Va. ix, 396 S.E.2d 675 (1990) (order). In *Lavinder v. Commonwealth,* 12 Va. App. 1003, 407 S.E.2d 910 (1991) (en banc), we distinguished between the standards for reviewing constitutional and non-constitutional error:

> In Virginia, non-constitutional error is harmless "[w]hen it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678 (emphasis added). "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.
>
> Constitutional error, on the other hand, is harmless only when the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt."

12 Va. App. at 1005, 407 S.E.2d at 911 (citation omitted).

The standard for constitutional error applies in this case. We cannot say that the error of refusing to admit relevant, material, probative evidence was harmless beyond a reasonable doubt. The excluded evidence was crucial to Neeley's defense. Accordingly, the convictions

appealed from are reversed, and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

Moon, C.J., and Barrow, J., concurred.