UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Huff
Argued at Salem, Virginia

ANTHONY WAYNE DELLINGER

                                         MEMORANDUM OPINION* BY

v.       Record No. 1613-12-3           JUDGE ROBERT J. HUMPHREYS
                                       MARCH 25, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

Shelly R. James (Law Office of Shelly R. James, PLLC, on briefs),
for appellant.

Aaron J. Campbell, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Anthony Wayne Dellinger ("Dellinger") was charged with rape, in violation of Code

§ 18.2-61, abduction with intent to defile, in violation of Code § 18.2-48, and use of a firearm in

the commission of the abduction or rape, in violation of Code § 18.2-53.1.  A jury acquitted

Dellinger of the rape charge and convicted him of assault and battery, simple abduction, and use

of a firearm in the commission of abduction.  Dellinger appeals his convictions arguing that the

Circuit Court of Rockingham County ("trial court") erred in three evidentiary rulings, namely:

(1) refusing to allow into evidence a transcript of the victim's prior testimony, (2) refusing to

allow evidence of the victim's prior sexual involvement with other men while she was involved

with Dellinger, and (3) allowing the Commonwealth to introduce numerous text messages sent to

Dellinger by a third party.  For the following reasons, we affirm the trial court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Jones v. Commonwealth, 50 Va. App. 437, 446, 650 S.E.2d 859, 863 (2007) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988)).  The abuse of discretion standard, "if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'  Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005) (quoting Henry J. Friendly, Indiscretion about Discretion, 31 Emory L.J. 747, 754 (1982)).

A.  Preliminary Hearing Transcript

Dellinger first argues that "[t]he trial court erred in refusing to allow [him] to introduce a transcript of the victim's prior testimony."  Dellinger attempted to introduce the transcript of the preliminary hearing of the case so that the jury members could determine for themselves whether the victim's prior testimony was inconsistent with her trial testimony.

> "When a witness takes the stand, she puts her credibility at issue in the case.  Thus, the opposing party may impeach the witness by 'drawing into question the accuracy of the witness's perception, recordation, recollection, narration, or sincerity.'  'Any evidence which would tend to convince the jury that the witness's perception, memory, or narration is defective or that his or her veracity is questionable is relevant for purposes of impeachment.'"

Via v. Commonwealth, 42 Va. App. 164, 183-84, 590 S.E.2d 583, 592 (2004) (quoting McCarter v. Commonwealth, 38 Va. App. 502, 506, 566 S.E.2d 868, 869-70 (2002)).

> It is fundamental to the right of cross-examination that a witness who is not a party to the case on trial may be impeached by prior statements made by the witness which are inconsistent with his present testimony, provided a foundation is first laid by calling his attention to the statement and then questioning him about it before it is introduced in evidence.

Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 594 (1987).

"Where a proper foundation has been laid, challenging a witness's credibility on the basis of his having made a prior inconsistent statement, the prior inconsistent statement itself becomes admissible for impeachment purposes." Waller v. Commonwealth, 22 Va. App. 53, 60, 467 S.E.2d 844, 848 (1996). "However, if the witness admits making the statement, the prior inconsistent statement may not be proved by extrinsic evidence." Currie v. Commonwealth, 30 Va. App. 58, 72, 515 S.E.2d 335, 342 (1999); see also Edwards v. Commonwealth, 19 Va. App. 568, 572, 454 S.E.2d 1, 3 (1995) ("If [the witnesses] admitted making the prior inconsistent statements, appellant would have succeeded in his impeachment. If they denied the statements, their testimony would have been subject to impeachment by other competent evidence.").

At the preliminary hearing, the victim testified, "At one point he had a knife in his hand. I don't know where it came from. And he pulled me into the bedroom." She also testified that once they were in the bedroom the knife was on the dresser within arm's reach. The victim did not mention that Dellinger made a statement about the hickey he gave her during the incident. On cross-examination at the preliminary hearing, the victim testified that she told Officer J.R. Dodd everything that happened during the incident and she did not believe she left anything out in reporting the incident to him.

At trial, the victim testified that Dellinger picked up a four to five inch buckmaster knife from the coffee table and led her into the bedroom where he put the knife on the dresser and told her to sit down on the bed and get undressed. She also testified that Dellinger left a hickey on her neck and he told her he was "marking" her so no one else could have her.

Defense counsel sought to impeach the victim using her preliminary hearing testimony. The victim acknowledged that she did not give a detailed description of the knife at the preliminary hearing. After the victim could not remember if she had testified at the preliminary hearing about Dellinger's statement that he was "marking her" with a hickey, defense counsel

provided her with a copy of the preliminary hearing transcript. After viewing the transcript, the victim stated that she had not mentioned Dellinger's statement regarding the hickey. Although the victim had testified at the preliminary hearing that she believed she told Officer Dodd everything, at trial she reviewed the police report and admitted that she did not tell Officer Dodd about a knife or about Dellinger's statement regarding the hickey.

Therefore, the victim admitted to the fact that certain details to which she testified at trial were not part of her prior testimony. The victim also admitted at trial that although she testified at the preliminary hearing that she told Officer Dodd everything, she in fact did not tell him about the knife or about Dellinger's statement regarding the hickey. Assuming without deciding that the victim's trial testimony was inconsistent with her preliminary hearing testimony, defense counsel's impeachment of the victim was complete at the point of her admissions. Because the victim admitted that she did not testify about the details of the knife or Dellinger's statement about the hickey at the preliminary hearing, the victim's prior silence may not be proved by extrinsic evidence. And because the victim admitted that she did not tell every detail of the offense to Officer Dodd as she had indicated at the preliminary hearing, no extrinsic evidence is allowed, or necessary, to prove that she testified at the preliminary hearing that she had told him everything. Currie, 30 Va. App. at 72, 515 S.E.2d at 342.[1] The trial court did not abuse its discretion in refusing to admit into evidence the preliminary hearing transcript.

---

[1] Dellinger relies on Jones, 50 Va. App. at 450-51, 650 S.E.2d at 865-66, to support his position. In Jones, the defendant testified at trial and his testimony was inconsistent from statements he made to police that were recorded in a video. Id. at 441, 650 S.E.2d at 860. The defendant sought to bolster his own explanation for his inconsistent statements with a video after each side had paraphrased and described the circumstances of defendant's recorded police interview. Id. at 443-44, 650 S.E.2d at 862-63. The trial court refused to play the video for the jury. Id. at 445, 650 S.E.2d at 863. The Jones Court considered the significant value of the videotape evidence giving the opportunity for the jury to consider the witness' manner when he was interviewed by police, just as a factfinder may consider a witness' manner in weighing his credibility when he is testifying in court. Id. at 450-51, 650 S.E.2d at 865-66. In the present case there is no video evidence at issue, and the inability of the jury to read words from a

B. The Victim's Sexual History

Next, Dellinger argues that "[t]he trial court erred in refusing to allow [him] to introduce evidence of the victim's prior sexual involvement with other men while she was involved with [him]." Defense counsel made a motion *in limine*, as required by Code § 18.2-67.7, wherein she requested to introduce evidence that Dellinger did not become irate and rape the victim on previous occasions when he knew that she had had sex with other men while she and Dellinger were still dating. Defense counsel argued that this evidence was necessary to rebut the Commonwealth's evidence and argument that Dellinger attacked and raped the victim out of jealousy when he found out about her most recent relationship.[2] Defense counsel intended to introduce the evidence of the victim's prior sexual conduct by asking the victim, and anticipated that the victim would admit that she told Dellinger about those other prior sexual relationships. The trial court ruled that defense counsel could introduce evidence that "the victim had prior relationships or boyfriends to which [Dellinger had] no strong objection or reaction." However, the trial court ruled that Dellinger could not specifically refer to the victim's sexual activity with other men.

> Generally, at common law, in prosecutions for rape, an accused could show that the victim had engaged in previous sexual intercourse with him or with others for the purpose of proving that force was unnecessary. Prior acts of sexual indiscretions or proof of promiscuity or being unchaste were considered relevant to determine whether a woman would consent to have sex with the accused.

---

transcript, the relevant portions of which defense counsel pointed out to the victim on cross-examination, is not analogous to denying a videotape from which the jury could view the particular circumstances of an interview and demeanor of the witness making the statements.

[2] While Dellinger was acquitted of the rape charge, he argues that this evidence was necessary to rebut the Commonwealth's theory of motive, which applied to all of the charges, not just the rape charge.

League v. Commonwealth, 9 Va. App. 199, 206, 385 S.E.2d 232, 236 (1989).  However,

Virginia's rape shield law, Code § 18.2-67.7, provides, in pertinent part:

> A.  [G]eneral reputation or opinion evidence of the complaining
> witness's unchaste character or prior sexual conduct shall not be
> admitted.  Unless the complaining witness voluntarily agrees
> otherwise, evidence of specific instances of his or her prior sexual
> conduct shall be admitted only if it is relevant and is:
>
>     *      *      *      *      *      *      *
>
> 2.  Evidence of sexual conduct between the complaining witness
> and the accused offered to support a contention that the alleged
> offense was not accomplished by force, threat or intimidation or
> through the use of the complaining witness's mental incapacity or
> physical helplessness, provided that the sexual conduct occurred
> within a period of time reasonably proximate to the offense
> charged under the circumstances of this case;
>
>     *      *      *      *      *      *      *
>
> B.  Nothing contained in this section shall prohibit the accused
> from presenting evidence relevant to show that the complaining
> witness had a motive to fabricate the charge against the accused.

This Court has addressed the conflict between the rape shield law and the constitutional

right of the criminal defendant to confront witnesses against him.  Neeley v. Commonwealth, 17

Va. App. 349, 355, 437 S.E.2d 721, 724 (1993).

> Properly understood, the rape shield law serves as a predicate to
> the constitutional analysis for the admission of evidence of a
> victim's prior sexual conduct in a sexual assault case.  Code
> § 18.2-67.7 first directs a trial judge to make a determination of
> relevance.  After discarding evidence of prior sexual conduct
> proffered by the defendant to impugn the character of the victim or
> for some similarly impermissible purpose, the trial judge must then
> determine whether the evidence falls within one of the enumerated
> exceptions in the statute, which by implication is a test of
> materiality, or is otherwise material to an issue of the case.
> Finally, the trial judge must admit other relevant, material
> evidence, not within the enumerated exceptions, when the
> exclusion of such evidence would deny the defendant the
> constitutional right to a fair opportunity to present evidence
> probative of his defense of the charges against him.

- 6 -

<u>Id.</u> at 357-58, 437 S.E.2d at 726. "'Evidence is relevant if it tends to establish the proposition for which it is offered. Evidence is material if it relates to a matter properly at issue.'" <u>Id.</u> at 356-57, 437 S.E.2d at 725 (quoting <u>Evans-Smith v. Commonwealth</u>, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987)).

Following the analytical framework in <u>Neeley</u>, here, the proffered evidence, that Dellinger was not so motivated by jealousy to physically attack and rape the victim in similar situations in the past, is relevant because it tends to establish that Dellinger lacked a jealous motive to do so on October 15, 2012, the date of the offense. "Proof of motive to commit an offense is admissible as tending to prove intent. Similarly, lack of motive is generally admissible to prove lack of a reason or intent to commit an offense." <u>Valentine v. Commonwealth</u>, 28 Va. App. 239, 244, 503 S.E.2d 798, 800 (1998). Further, while evidence of other acts is "generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith," such evidence is admissible if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive. Rule 2:404(b).

The Commonwealth argued that Dellinger's motive to commit the offenses was jealousy, thus making motive a matter at issue in the case. Therefore, the proffered evidence was material because Dellinger intended to use it to prove his lack of a jealous motive to commit the offenses.

While Dellinger did not seek to introduce "reputation or opinion evidence" of the complaining witness' unchaste character or prior sexual conduct, he did seek to introduce evidence of specific instances of the victim's prior sexual conduct to which none of the exceptions in Code § 18.2-67.7 apply. Dellinger argues exceptions (A)(2) and (B) apply. However, subsection (A)(2) is inapplicable because that exception applies to "[e]vidence of sexual conduct between the complaining witness and the accused." Here, Dellinger sought to introduce evidence of sexual conduct between the complaining witness and *other* men, not the

- 7 -

accused.  Subsection (B) also does not apply because it allows "evidence relevant to show that the *complaining witness* had a motive to fabricate the charge against the accused."  Code § 18.2-67.7 (emphasis added).  Whereas, in this case, the proffered evidence was offered to rebut the Commonwealth's theory of the *defendant's* motive.  The evidence of the victim's sexual conduct with men other than her new boyfriend, C.G. ("C.G."),[3] and Dellinger, was not relevant to her motive to fabricate the charge against Dellinger.

Having determined that the proffered evidence is both relevant and material, yet does not fall within any of the exceptions to the rape shield law, the question becomes:  would the exclusion of the evidence deny the defendant the constitutional right to a fair opportunity to present evidence probative of his defense of the charges against him?  Neeley, 17 Va. App. at 358, 437 S.E.2d at 726.  On the facts of this case, we conclude that the trial court did not deny Dellinger a fair opportunity to present evidence probative of his defense.  First, there is no testimony that the victim expressly told Dellinger that she was having sex with C.G. prior to the offense.  There is testimony that the victim was in fact having sex with C.G. and Dellinger over the same period of time and that C.G. spent the night with the victim the night before Dellinger attacked her.  On the date of the offense, the victim "said something about [C.G.] being [at the party the night before] and [Dellinger] flipped out."  From this evidence the Commonwealth argued that Dellinger was jealous that the victim chose another man over him and that he was "not okay" with her having a new boyfriend.  The Commonwealth did not specifically argue that Dellinger knew of the victim's *sexual* conduct with C.G. or that her *sexual* conduct enraged Dellinger.  Further, the victim did testify on direct examination that she would "see other people" when she and Dellinger broke up for a week or two over the course of their rocky relationship.

---

[3] The evidence of the victim's sexual relationship with C.G. was introduced with the victim's consent and without objection by the Commonwealth.

- 8 -

And on cross-examination, the victim affirmed that she had "spent time with other men" during periods when she and Dellinger had broken up and that "he never flipped out in the past about this." The victim clarified that Dellinger would get angry and they had arguments during which they screamed and yelled at each other, but he never reacted as he did on October 15.

Therefore, the express testimony was that Dellinger knew that the victim "spent time with other men," and did not react in the same way as he reacted when she mentioned that C.G. was at the party with her the night before. In other words, the jury would have to draw an inference in order to conclude that Dellinger knew that the victim was having sex with C.G. Thus, it was not error for the trial court to forbid evidence referring specifically to the victim's prior sexual conduct with third parties, as generally forbidden by the rape shield statute, and to limit defense counsel to inquiring about the fact that the victim had relationships with and spent time with other men over the course of her relationship with Dellinger. Dellinger had a fair opportunity to present his defense that he never reacted out of jealousy with physical violence when faced with similar circumstances in the past.

Dellinger also argues that the Commonwealth "waived" the provisions of the rape shield law that normally would exclude evidence of the victim's sexual conduct with other men, by introducing evidence that Dellinger "flipped out" on hearing the name of the victim's new boyfriend and then attacked out of jealousy. This waiver argument has no merit, as a mention of the existence of the victim's new boyfriend does not equate to evidence that Dellinger knew that the victim had sex with her new boyfriend, and it certainly does not open the door to allow defense counsel to present evidence of the victim's prior sexual conduct with other men throughout her relationship with Dellinger. We therefore cannot say that the trial court abused its discretion in refusing to admit evidence of the victim's prior sexual conduct.

## C. Text Messages

Lastly, Dellinger argues that "[t]he trial court erred in allowing the Commonwealth to introduce as evidence numerous text messages that were not sent by [him]."

The trial court allowed the Commonwealth to enter into evidence some of the text messages that a friend, A.V. ("A.V"), sent to Dellinger on the night of October 15. Defense counsel objected, arguing that all of the messages were irrelevant and that some of them were more prejudicial than probative. The seven text messages entered into evidence over Dellinger's objection that the messages were irrelevant and prejudicial read:

> "Idk ant shes got dif story n im nt gettn in this one at all."
>
> "Ur no trouble just don't get into none."
>
> "Stanely u mean lol u cnt spell just be careful don't do anything stupis."
>
> "Lol im sure shes fine."
>
> "Idk where she is i know she upset."
>
> "U swear u didn't show ur ass today."
>
> "At this point u might as well nt think about her n stop textn n calling."

All of the text messages from A.V. to Dellinger that were entered into evidence comprised a single exhibit. Officer Dodd testified that there were half as many text messages in Dellinger's outgoing box as there were in the incoming box. The Commonwealth introduced these messages not for the truth of their content, but to rather prove that there was a conversation between Dellinger and A.V., and to prove that Dellinger deleted text messages relating to the over nine hours of conversation with A.V. The Commonwealth argued that the missing messages are relevant "to the state of mind of the defendant, the fact as to whether or not he attempted to cover up what he believed to be incriminating statements against him."

The trial court gave a limiting instruction to the jury at the time the Commonwealth introduced the exhibit, cautioning that the text messages are "just back and forths and they're not admitted for the truth of anything that is contained in [them] so weigh them accordingly."

"Evidence is relevant if it tends to establish the proposition for which it is offered." Evans-Smith, 5 Va. App. at 196, 361 S.E.2d at 441 (quoting C. Friend, The Law of Evidence in Virginia § 134 (2d ed. 1983)). Acts of

> deceitful behavior immediately following the commission of a crime, are acts that generally cannot be explained in terms of innocent human behavior. Thus, when a defendant affirmatively acts in such a manner, a court may consider those acts in the context of all the facts presented as evidence tending to show the defendant's consciousness of guilt of the crime committed.

Jones v. Commonwealth, 279 Va. 52, 58, 688 S.E.2d 269, 272 (2010).

In this case, the text messages showed that over nine hours almost immediately after the crime, A.V. and Dellinger were having a texting conversation, yet there were no messages sent from Dellinger to A.V. in Dellinger's phone. The absence of outgoing messages from Dellinger to A.V., when the phone contained other outgoing messages, supports a strong inference that Dellinger deleted the messages he sent to A.V. While not contested, the entire exhibit included text messages from a conversation between C.G. to Dellinger the evening after the crime, but again there were no messages outgoing from Dellinger to C.G. The absence of any text messages from Dellinger to A.V. or C.G. tends to prove that Dellinger deleted messages to cover up his guilt. Thus, the exhibit containing the text messages was relevant.

Dellinger argues that the seven of the messages sent from A.V. to Dellinger quoted above were unduly prejudicial. All evidence tending to prove guilt is prejudicial to the defendant. Thomas, 44 Va. App. at 757, 607 S.E.2d at 746. As the Commonwealth points out, "Virginia law, however, intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences." Id. at 758, 607 S.E.2d at 746. Dellinger does not establish that

the text messages inflamed irrational emotions in the jury or led them to make illegitimate inferences.  Therefore, the trial court did not abuse its discretion in allowing the exhibit containing the text messages into evidence.

For the foregoing reasons, we affirm the rulings of the trial court.

<u>Affirmed.</u>