UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia

AIDAN JOSEPH NEVERS

                                                      MEMORANDUM OPINION[*] BY
v.        Record No. 0291-22-2                  JUDGE MARY GRACE O'BRIEN
                                                          MARCH 21, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AMELIA COUNTY
Joseph M. Teefey, Jr., Judge[1]

(Marlene A. Harris, on briefs), for appellant. Appellant submitting
on briefs.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Aidan Joseph Nevers (appellant) of rape and sentenced him to

twenty years' imprisonment with twelve years and ten months suspended. On appeal, appellant

challenges the sufficiency of the evidence to sustain his conviction and several of the court's

evidentiary rulings. For the following reasons, we affirm.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

[1] Although Judge Teefey presided over the trial and entered the final order, Judge Paul
W. Cella entered the pretrial order excluding evidence of prior sexual conduct between appellant
and S.T.—a ruling that forms the basis for one of appellant's assignments of error.

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On May 23, 2020, 17-year-old S.T. attended a "prom party" at appellant's home. COVID-19 restrictions prohibited large gatherings, including school functions, and this party was planned as a substitute prom. S.T. was classmates with appellant's sister, Lauren, and attended the party at the invitation of appellant's aunt.

S.T. and appellant had been friends for approximately five years and had previously dated. S.T. arrived at the party alone between 6:00 p.m. and 7:00 p.m., bringing a half-ounce of marijuana and three bottles of liquor. She put the liquor in the kitchen freezer and took photos outside with the other attendees. After the photos, S.T. began drinking the alcohol she brought and later drank a rum-based mixture that Lauren gave her. In total, S.T. had at least six mixed drinks.

S.T. became intoxicated and vomited outside. Lauren and her friend Autumn Lawrence, who had both observed S.T. drinking a lot during the party, brought S.T. inside to the bathroom, helped her undress, and put her into the shower. S.T. lay in the shower for at least an hour while her head was "spinning," and she threw up twice more.

After the shower, S.T. could barely walk, so another friend of Lauren's—McKenzie Hainsworth—helped S.T. dress and get to a bed. S.T. was stumbling, and McKenzie held her to keep her steady. S.T. made her way to the first bed she saw, which was appellant's bed in a room directly across from the shower. McKenzie testified that S.T. was "out cold" after she got to the bed. McKenzie periodically checked on S.T. and each time found her asleep. McKenzie told appellant, "No funny business," because S.T. was drunk and had a boyfriend. S.T. threw up again while lying in appellant's bed.

S.T. did not remember anything after entering the shower until she woke up with appellant on top of her around 4:00 a.m., with his penis inside her vagina. After appellant "pulled out," S.T.

rolled away from him, and he ejaculated onto her back. S.T. got dressed and went to the bathroom. Appellant pointed out that S.T. had vomit on her shirt, so she changed.

Around 4:30 a.m., S.T. was still intoxicated and could not drive home. She and appellant went to the sunroom to smoke marijuana and talk. S.T. began crying and confronted appellant about the incident. He told her that he was "rubbing [her] body, and his dick fell between [her] butt, and he couldn't help himself." At approximately 6:00 a.m., S.T. drove home and reported what happened to her mother and McKenzie.

The next day, S.T. and her mother went to appellant's house and told his mother and stepfather what happened. Appellant's family subsequently cleaned the bathroom and downstairs of the house and washed all the bedding. S.T. also texted appellant and told him to turn himself in. S.T. then went to the hospital, where a forensic nurse completed a rape kit and sexual assault report. Appellant was subsequently charged with rape.

In December 2020, appellant filed a "Notice of Intent to Introduce Evidence of Prior Sexual Conduct," advising that at trial he intended to introduce evidence of his prior sexual relationship with S.T. The Commonwealth filed a motion *in limine* seeking to exclude the evidence because it was not relevant or "reasonably proximate to the offense charged" as required by Code § 18.2-67.7(A)(2).

At a pretrial hearing, S.T. testified that her friendship with appellant began in 2015 and developed into a sexual relationship in July 2019. It was undisputed that the sexual relationship ended in November 2019. Thereafter, they "text[ed] each other sometimes" but never discussed or had sex.

In a letter opinion, the court granted the Commonwealth's motion to exclude the evidence. After first determining that the evidence was relevant to the issue of consent, the court ultimately ruled that it was inadmissible because the sexual relationship "did not occur 'within a period of time

reasonably proximate to the offense charged under the circumstances of [this] case,'" quoting Code § 18.2-67.7(A)(2). In reaching this conclusion, the court noted that six months had elapsed between the "clean break" of the parties' sexual relationship and the offense date.

At trial, the court made additional evidentiary rulings challenged on appeal. During the cross-examination of Ethan Lawrence, a Commonwealth's witness who had attended the party, appellant repeatedly asked if he saw S.T. dancing at the party. Ethan replied "no" multiple times. The court precluded appellant from showing Ethan photographs to refresh his recollection because Ethan had unequivocally testified that he did not see S.T. dancing.

During the testimony of appellant's aunt, appellant asked if S.T. had ever talked about her relationship with her boyfriend at the time. The Commonwealth objected, arguing that the question called for hearsay. Appellant responded that the statements would show S.T.'s state of mind. The court sustained the objection. Appellant next argued that the statements would be "probative of what [S.T.] denied" and thus were "offered in rebuttal to . . . her own testimony before the [c]ourt." The court ruled that, because the Commonwealth's objection was based on hearsay and not relevance, "the probative value versus prejudicial effect doesn't have any calculus in the decision of the [c]ourt." The court therefore excluded the testimony. Appellant made no proffer of the excluded evidence.

Several adults present at the party denied seeing anyone—including S.T.—drink alcohol or display signs of intoxication. Appellant's stepbrother, Caiden Muscat, also testified that he did not see S.T. intoxicated that night. Caiden first claimed that S.T. was not drinking at the party but later admitted that she was. Caiden, who shares a bedroom with appellant, further testified that he walked into the room around 2:00 a.m. and saw S.T. lying alone on appellant's bed. When Caiden later got into his own bed at approximately 3:30 a.m., he saw that appellant was lying with S.T.

Appellant testified in his defense. He stated that, on the night of the party, he started drinking S.T.'s alcohol at 7:00 p.m. and he and S.T. danced together and interacted "quite often." According to appellant, at one point S.T. jumped on his back near the dance floor and told him that she missed him and was "stressing" about her current boyfriend. About five to ten minutes later, S.T. found appellant in the sunroom, they spoke for twenty minutes with their legs touching, and S.T. hugged him. Appellant later saw S.T. drinking but testified that she displayed no signs of intoxication at that time. Appellant claimed that, after another conversation, S.T. hugged him and said she loved and missed him. Appellant saw S.T. vomit outside, and he told Lauren and her friends McKenzie and Autumn to put S.T. in the shower.

Appellant did not remember McKenzie telling him, "No funny business." According to appellant, he lay down in bed next to S.T. at some point after 1:30 a.m. and fell asleep. Appellant testified that about two hours later, he awoke when S.T. grabbed his arm and placed it on her breast. He denied initiating sexual contact with S.T. but acknowledged participating once it began. He admitted that they had intercourse, which ended when he "pulled out" and ejaculated onto S.T.'s back. Appellant testified that S.T.'s cell phone rang, and they both immediately got out of bed and went to the bathroom.

Appellant testified that S.T. did not appear intoxicated at any point after the intercourse. He and S.T. went to the sunroom and smoked marijuana on the couch with their legs touching for about two hours. After S.T. received a call from her boyfriend, her mood became "[p]rogressively worse," and she started crying. Appellant testified that, after he and S.T. walked to her car to retrieve medicine for a friend, S.T. accused him of raping her. At trial, appellant denied forcing himself on S.T., asserting that he "would never take advantage of anybody." He testified that S.T. was his best friend and he "love[d] her with all [his] heart."

After the close of the evidence and argument by counsel, the court found the evidence established that there was "a pretty large consumption of alcohol" and S.T. was so inebriated that she vomited multiple times. The court found that the testimony of S.T., McKenzie, and Autumn was credible and accepted their version of events over appellant's and other party attendees'. Additionally, the court found that the adults' testimony was incredible. The court convicted appellant of rape.

## ANALYSIS

### I. Evidentiary Issues

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019)). Under that standard, a "trial judge's ruling will not be reversed simply because an appellate court disagrees." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). Rather, a reviewing court can conclude that "an abuse of discretion has occurred" only when "reasonable jurists could not differ" about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

### A. Prior Sexual Conduct

Code § 18.2-67.7, often called the rape shield law, provides that "[i]n prosecutions [for rape and other sexual offenses], general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted." Code § 18.2-67.7(A); *see* Va. R. Evid. 2:412. The statute further provides that "evidence of specific instances of [a complaining witness's] prior sexual conduct shall be admitted only if it is relevant" and is encompassed by one of three enumerated exceptions. Code § 18.2-67.7(A). Appellant sought to admit evidence

of his prior sexual relationship with S.T. under the exception set forth in Code § 18.2-67.7(A)(2), which allows:

> [e]vidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness, provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case.

Appellant argues that the court erred in excluding the evidence on the ground that it was not "reasonably proximate to the offense charged." Code § 18.2-67.7(A)(2). In addition, he asserts the court erred by "ending its determination there" and not considering "whether the exclusion of the evidence would deny [him] a fair opportunity to present evidence probative of his defense."

Reasonably proximate "is a relative term which varies according to the situation." *League v. Commonwealth*, 9 Va. App. 199, 208 (1989), *aff'd on reh'g en banc*, 10 Va. App. 428 (1990). "Whether prior sexual contact is 'reasonably proximate' to the offense charged must be decided based on the totality of the circumstances of each case." *Id.* (quoting Code § 18.2-67.7(A)(2)).

In *League*, this Court reversed a trial court's determination that sexual contact was not reasonably proximate because it occurred eight or nine months before the incident. 10 Va. App. at 208-09. We held that the court inappropriately focused on the time that had elapsed, when other evidence suggested that the victim had previously told the defendant that "future sex would cost him $50." *Id.* at 209. We stated that a proper inquiry into whether sexual contact was reasonably proximate involves considering not only the time between the two alleged sexual acts but also "the nature" of the two acts, "whether the relationship was a continuing one," and "the circumstances surrounding the alleged offense." *Id.* at 208. Those factors "govern whether the

evidentiary value of the prior conduct is so remote that it cannot fairly be said to have probative value on the issue whether the [victim] consented to the sexual act" at issue. *Id.*

Here, the court properly considered the factors required in *League* in concluding that the proposed evidence was not reasonably proximate. The court acknowledged that the alleged timeframe between the incidents, six months, was less than the timeframe at issue in *League*. Nevertheless, unlike in *League*, the evidence established a "clean break" in the sexual relationship between S.T. and appellant, after which they exchanged only "innocuous social communications." Thus, the court concluded that the length of time between the sexual conduct "combined with the lack of any further discussions regarding sexual relations" meant the evidence was not "reasonably proximate." That finding was within the "bell-shaped curve of reasonability governing our appellate review," *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)), and, therefore, we find no abuse of discretion.

Nevertheless, appellant argues that exclusion of this evidence violated his Sixth Amendment right to present evidence on his behalf. The Sixth Amendment right to confront witnesses, combined with due process guarantees in the Fifth and Fourteenth Amendments, "give [a] defendant a constitutional right to present relevant evidence." *Neeley v. Commonwealth*, 17 Va. App. 349, 356 (1993). "This right must on occasion give way to the broader interest of the government in fairly administering justice." *Id.* Rules of evidence, for example, may "limit the right of a defendant to present relevant evidence" that is not material. *Id.*; *cf. Warnick*, 72 Va. App. at 263-64 ("Although a criminal defendant has the right to 'call for evidence in his favor,'" such evidence is "nonetheless subject to the Virginia Rules of Evidence." (quoting Va. Const. art. 1, § 8)). We have distinguished between relevant and material evidence as follows: "'[E]vidence is relevant if it tends to establish the proposition for which it is offered.' Evidence

is material if it relates to a matter properly at issue." *Neeley*, 17 Va. App. at 356-57 (quoting *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196 (1987)).

"Properly understood, the rape shield law serves as a predicate to the constitutional analysis for the admission of evidence of a victim's prior sexual conduct in a sexual assault case." *Id.* at 357. If the court determines that relevant evidence does not "fall[] within one of the enumerated exceptions in the statute," that is "by implication" a conclusion that the evidence is not "material." *Id.* at 357-58. The exclusion of immaterial evidence does not violate the Sixth Amendment or due process, which only protect a defendant's right to present relevant, material evidence. *See id.* at 356, 357-58.

Here, after finding that the evidence of S.T. and appellant's prior sexual relationship was relevant to the issue of consent, the court determined that the relationship was not "reasonably proximate" to the incident. Code § 18.2-67.7(A)(2). By implication, then, the court also found that the evidence was not material and appellant's constitutional rights would not be violated by its exclusion. *See Neeley*, 17 Va. App. at 356, 357-58. Indeed, given the "clean break" in the relationship and merely innocuous communications in the six months before the offense, any evidence of S.T.'s prior sexual relationship with appellant does not "relate[] to a matter properly at issue." *Id.* The court was not required, as appellant argues, to weigh the probative value of the evidence against its prejudicial effect, a requirement only applicable to "other relevant, material evidence, not within the enumerated exceptions." *Id.* at 358. Thus, the court did not err in excluding the evidence of appellant and S.T.'s prior sexual relationship.

### B. Refreshed Recollection

Appellant argues the court erred in denying him the opportunity to refresh Ethan's recollection after he testified that he did not see S.T. dancing at the party.

"The act of refreshing a witness's recollection does not involve contradicting that witness's testimony." *Ruhlin v. Samaan*, 282 Va. 371, 379 (2011). "Rather, 'when a witness has a memory lapse on the stand[,] . . . a party may attempt to "refresh" the witness's memory by having the witness examine materials relating to the matter for which they are testifying.'" *Id.* (quoting *McGann v. Commonwealth*, 15 Va. App. 448, 451-52 (1992)). "After examining such materials, a witness may then 'speak to the facts from his own recollection.'" *Id.* (quoting *Harrison v. Middleton*, 52 Va. (11 Gratt.) 527, 544 (1854)).

Here, Ethan did not have a "memory lapse on the stand." *Id.* (quoting *McGann*, 15 Va. App. at 451). Instead, he stated multiple times that he had not seen S.T. dancing at the party. Thus, appellant was not attempting to refresh the witness's recollection but, rather, to contradict his testimony. Under those circumstances, the court did not abuse its discretion by refusing to allow appellant to show him photographs that contradicted his testimony ostensibly to refresh his recollection.

## C. Hearsay

Appellant argues that the court erred in excluding S.T.'s out-of-court statements in response to a question about her boyfriend. Appellant asserts that because the statements would have been introduced to show S.T.'s state of mind, not for the truth of the matter asserted, the hearsay exclusion did not apply.

"In Virginia, when 'testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.'" *Ray v. Commonwealth*, 55 Va. App. 647, 649 (2010) (quoting *Whittaker v. Commonwealth*, 217 Va. 966, 968 (1977)). "When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error—much less reversible error—without 'a proper showing of what that testimony would have been.'" *Id.* (quoting *Tynes v. Commonwealth*, 49 Va. App. 17, 21

(2006)). "Absent a proffer showing 'harm was done,' we are 'forbidden to consider the question.'" *Id.* at 650 (quoting *Scott v. Commonwealth*, 191 Va. 73, 78-79 (1950)).

Here, the court sustained the Commonwealth's hearsay objection to the testimony. Appellant asserted that S.T.'s statement would show her state of mind and would be probative of what S.T. denied during her own testimony. At no point, however, did appellant proffer what the testimony would have been. Without a proffer, "we cannot competently determine error" and are "'forbidden to consider the question.'" *Id.* at 649-50 (quoting *Scott*, 191 Va. at 79). Thus, appellant has waived this assignment of error.

## II. Sufficiency of the Evidence

Appellant argues the court erred in finding that the evidence was sufficient to sustain his conviction because the Commonwealth failed to prove that S.T. was physically helpless at the time of the offense. *See* Code §§ 18.2-61(A)(ii); -67.10(4). He maintains that the only evidence of S.T's physical helplessness "was from [five] to [six] hours before the sexual intercourse."[2]

---

[2] Appellant also suggests the evidence failed to prove that he "was on notice of S.T.'s condition," as required by the definition of "[p]hysical helplessness" in Code § 18.2-67.10(4). That argument, however, is waived because appellant's opening brief fails to comply with Rule 5A:20(e). An opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Rule 5A:20(e). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)).

Consistent with these principles, we have held that a criminal defendant's failure to comply with Rule 5A:20(e) was significant when he made "one reference" to a single case and failed to support his argument "with any legal analysis or authority from [that case] or any other source." *Id.* at 745. Consequently, we declined to consider his arguments. *Id.* at 746-47.

Similarly, here, appellant's brief makes a passing reference to Code § 18.2-67.10(4)'s requirement that the evidence prove he was "on notice" of S.T.'s condition before generally concluding that the evidence failed to prove he was on notice. He cites no other legal authority and, at best, posits a skeletal argument that fails to provide this Court with a "legal prism through which to view his alleged error." *Id.* at 746. Accordingly, his argument is waived.

Any "person [who] has sexual intercourse with a complaining witness . . . through the use of the complaining witness's mental incapacity or physical helplessness . . . shall be guilty of rape." Code § 18.2-61(A)(ii). "'Physical helplessness' means unconsciousness or any other condition existing at the time of [the] offense . . . which otherwise rendered the complaining witness physically unable to communicate an unwillingness to act and about which the accused knew or should have known." Code § 18.2-67.10(4). "Unconsciousness is defined as '[n]ot possessed of mind. . . . Insensible to the reception of any stimuli and incapable of performing or experiencing any controlled functions,' or '[h]aving lost, esp. temporarily, the capacity for sensory perception.'" *Woodward v. Commonwealth*, 12 Va. App. 118, 121 (1991) (alterations in original) (first quoting *Black's Law Dictionary* 1367 (5th ed. 1983); and then quoting *The American Heritage Dictionary* 1318 (2d College ed. 1982)). Thus, we have held that "engaging in sexual intercourse with a sleeping victim can constitute commission of the crime of rape, in violation of Code § 18.2-61, by means of the victim's 'physical helplessness.'" *Conley v. Commonwealth*, 74 Va. App. 658, 678 (2022) (quoting *Nelson v. Commonwealth*, 73 Va. App. 617, 627 n.5 (2021)). "[L]ongstanding common law principles . . . recognize that a victim is unable to give consent for sexual contact while sleeping." *Id.* at 677 (second alteration in original) (quoting *Nelson*, 73 Va. App. at 626). "[B]ecause consensual sexual activity requires 'continued consent' during the duration of the activity, whenever a sleeping person is unable to express consent, that person consequently cannot consent to sexual activity." *Id.* at 678-79.

Additionally, appellant's challenge to the sufficiency of the evidence implicates the court's determination of witness credibility. "Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304

- 12 -

(1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Here, the evidence demonstrated that S.T. consumed at least six drinks, five of which were composed entirely of alcohol. She vomited outside, in the shower, and in appellant's bed. Although appellant claimed S.T. did not exhibit signs of intoxication, he admitted that he saw her vomit outside. S.T. did not remember anything after lying in the shower until she woke up with appellant on top of her around 4:00 a.m., with his penis inside of her vagina. Accordingly, the record establishes that S.T. was heavily intoxicated, asleep, and "unable to communicate an unwillingness to act." Code § 18.2-67.10(4).

Although appellant's conviction may be sustained on S.T.'s uncorroborated testimony alone, *see Nobrega v. Commonwealth*, 271 Va. 508, 519 (2006), the record provides ample corroboration, *see Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that a witness's testimony was not inherently incredible when it was corroborated by other evidence). Multiple witnesses testified to S.T.'s condition and described her as very intoxicated. The witnesses who helped S.T. in the shower saw her vomit there twice more. She could barely walk and needed to be held up. Immediately after S.T. reached the closest bed to the bathroom, she was "out cold" and remained asleep each time McKenzie checked on her.

After balancing all the evidence, the court found S.T.'s corroborated testimony credible. That evidence supported the finding that she fell asleep after excessive drinking and awoke with appellant on top of her, with his penis inside her vagina; thus, she was physically helpless at the time of the offense. *See* Code §§ 18.2-61(A)(ii), -67.10(4). The Commonwealth's evidence was competent, not inherently incredible, and sufficient to prove beyond a reasonable doubt that appellant was guilty of rape.

CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*